UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NOLA RUTH-LEE,<br><br>              Plaintiff,<br><br>       vs.<br><br>PACIFIC TELESIS GROUP<br>COMPREHENSIVE DISABILITY BENEFITS<br>PLAN, and SEDGWICK CLAIMS<br>MANAGEMENT SERVICES, INC.,<br><br>              Defendants. | Case No:  C 09-3504  SBA<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION TO DISQUALIFY<br>COUNSEL**<br><br>[Docket 18] |

        Plaintiff Nola Ruth-Lee ("Plaintiff"), through her attorney, Geoffrey V. White ("Counsel"), brings the instant action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., against Pacific Telesis Group Comprehensive Disability Benefits Plan and Sedgwick Claims Management Services, Inc. (collectively "Defendants") to challenge their denial of her claim for long-term disability ("LTD") benefits. The parties are presently before the Court on Defendants' Motion to Disqualify Plaintiff Nola Ruth-Lee's Counsel.  (Docket 18.)  Defendants contend that Counsel has a disqualifying conflict of interest based on his role as a neutral evaluator and mediator in a case previously filed in this District, Edwards v. AT&T Disability Income Plan, Case No. 07-4573 PJH ("Edwards").  Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

I.      **BACKGROUND**

A.      **THE EDWARDS CASE**

Carl Edwards ("Edwards") worked for American Telephone and Telegraph Company ("AT&T"), and later, Pacific Bell Telephone, from February 2000 through August 2006. Defs.' Request for Jud. Notice ("RJN"), Ex. E at 1.  As an AT&T employee, he became a participant in the AT&T Disability Income Program ("AT&T Plan"), formerly known as the SBC Communications Inc. Disability Income Plan.  Watt Decl. ¶ 6.

In May 2006, Edwards filed a claim for LTD benefits through Sedgwick Claims Management Services ("Sedgwick"), the AT&T Plan's third party administrator.  Edwards claimed he was unable to work due to various health issues, including heart disease and diabetes-related conditions.  Id., Ex. E at 5.  Sedgwick referred Edwards' medical records to Barbara Parke, M.D., an Independent Physician Advisor, for evaluation.  Id. at 7.  After receiving Dr. Parke's analysis as well as considering the opinions of Edwards' treating physicians, Sedgwick denied his claim.  Id. at 8.  Edwards appealed the decision. Sedgwick forwarded his medical records to four additional Independent Physician Advisors, who concurred with Edwards' treating physicians' conclusion that he could perform sedentary work, with accommodations.  Id. at 10.  As a result, Sedgwick denied Edwards' appeal.

On September 4, 2007, Edwards brought an ERISA action against the AT&T Plan for wrongfully denying his claim for LTD benefits, which was assigned to District Judge Phyllis Hamilton of this Court.  RJN, Ex. A.  The complaint alleged that:  (1) the AT&T Plan failed to provide him with a full and fair review of his claim; (2) the decision to deny him benefits was wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the AT&T Plan and contrary to law; and (3) the AT&T Plan was both the administrator of the plan and the payer of benefits and therefore had a conflict of interest.  Id. ¶¶ 15-18.  Plaintiff alleged that that the AT&T Plan's conduct constituted an unlawful denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).  Id. ¶ 20.

On June 2, 2008, the Clerk of the Court appointed Counsel as an evaluator, pursuant to the Court's Early Neutral Evaluation ("ENE") program.  RJN, Ex. D.  On July 29, 2008, the

parties and their counsel met with Counsel to commence the ENE process. White Decl. ¶ 7. The first part of the meeting consisted of a joint session at which both sides made their respective presentations. Id. At the conclusion of the joint session, Counsel prepared a written evaluation and stated that he either could (1) present his evaluation and then discuss settlement or (2) engage them in settlement discussions first. Id. The parties chose the latter option. Id.

Counsel then spent the remainder of the session on July 29, 2008, in joint sessions and in private caucuses. Id.[1] AT&T Senior Benefits Analyst Nancy Watts met with Counsel during joint sessions and in separate meetings with Counsel only. Watt Decl. ¶¶ 2, 10.[2] During these private caucuses, Ms. Watt claims they disclosed confidential information to Counsel by responding to his evaluation and revealing their defense strategy. Id. ¶ 10. Counsel denies that he obtained any confidential information from AT&T during their private sessions, and alleges that any information disclosed to him also was disclosed and otherwise available to Edwards and his counsel. White Decl. ¶ 12.

Subsequent to the July 29, 2008, session, Counsel conducted two follow-up sessions by telephone conference call on August 12, 2008. Id. ¶ 11. After the call, plaintiff's counsel submitted a letter regarding the value of benefit offsets if LTD benefits were granted. Id. The parties engaged in a follow up telephone call with Counsel on August 27, 2008, to discuss the offset issue. Id. However, the case did not settle. RJN, Ex. E. On March 11, 2009, Judge Hamilton issued an Order Granting Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment. Id., Ex. F.

### B.   THE INSTANT CASE

Plaintiff worked for Pacific Telesis (which later became known as AT&T) as a systems technician from 1980 to August 2006. Compl. ¶ 6. Plaintiff was a participant under the Pacific

---

[1] ADR Local Rule 5-6 states: "Except with respect to scheduling matters, there shall be no ex parte communications between parties or counsel and the evaluator, including private caucuses to discuss settlement, until after the evaluator has committed his or her evaluation to a writing and all parties have agreed that ex parte communications with the evaluator may occur."

[2] Ms. Watts works for AT&T Services, Inc., a subsidiary of the AT&T, Inc., the Plan Administrator for the plan at issue in Edwards and the plan in this case. Watts Decl. ¶¶ 2, 7.

Telesis Group Comprehensive Disability Benefits Plan ("the Plan"), which is administered by Sedgwick. Id. ¶ 3; Watt Decl. ¶ 6. Plaintiff left her job when she began suffering from back pain caused by an eroding spinal cyst and damage to her lumbosacral spine. Compl. ¶ 3. Although Plaintiff returned to work briefly for a period of time, she has remained unemployed since April 2007. Id.

After initially denying Plaintiff's claim for short-term disability benefits, Sedgwick granted Plaintiff's claim for benefits through December 28, 2007, and then placed her on LTD, effective December 29, 2007. Id. ¶ 6. On August 22, 2008, Sedgwick terminated Plaintiff's LTD benefits, notwithstanding the fact that Plaintiff's condition had not changed. Id. ¶ 7. Plaintiff appealed the termination of LTD benefits, which Sedgwick ultimately rejected. Id. ¶ 8. In April 2009, Plaintiff applied for and was granted Disability Retirement based on financial duress. Id.

On July 30, 2009, Plaintiff, represented by Counsel, filed the instant action in this Court against Defendants to challenge the termination of her benefits. The Complaint alleges two claims, styled as: (1) Claim for Disability Benefits; and (2) Breach of Fiduciary Duty. Defendants now move to disqualify Counsel from representing Plaintiff in this action based on his prior involvement in the Edwards action. Defendants contend that although the actions involve different medical issues and plans, the legal claims are the same and both involve almost identical AT&T plans that are administered in the same manner by the same outside claims administrator, i.e., Sedgwick. Plaintiff opposes the motion.

## I.   LEGAL STANDARD

The district court has the discretion to disqualify counsel based on a conflict of interest. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000); Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980). The state ethical rules of the forum state—in this case, California—govern the Court's disqualification analysis. See In re County of Los Angeles, 223 F.3d at 995; N.D. Cal. Civ. L.R. 11-4(a)(1) (attorneys must "comply with the standards of professional conduct required of the members of the State Bar of California."). A trial court's authority to disqualify an attorney derives from the power inherent in every court to control the conduct of

its ministerial officers, in the furtherance of justice.  See Gas-A-Tron of Ariz. v. Union Oil Co. of Calif., 534 F.2d 1322, 1325 (9th Cir. 1976).

"Motions to disqualify counsel are strongly disfavored."  Visa U.S.A., Inc. v. First Data Corp., 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (Hamilton, J.).  Because a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, requests for disqualification are subject to "particularly strict judicial scrutiny."  Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotations omitted). The party seeking disqualification bears a "heavy burden."  City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839, 851 (2006).  In considering a disqualification motion, the district court is obligated to make "a reasoned judgment," Gregori v. Bank of Am., 207 Cal.App.3d 291, 300 (1989), and may resolve disputed factual issues and must make findings supported by substantial evidence, Dept. of Corps. v. SpeeDee Oil Change Syst., 20 Cal.4th 1135, 1143 (1999).

## II.   DISCUSSION

The gravamen of Defendants' motion is that Counsel presumptively obtained confidential information during the course of the Edwards ENE sessions that automatically disqualifies him from representing Plaintiff in this action.  In cases such as the present where the disqualification is based on an attorney's prior role as a mediator in a case involving at least some of the same defendants, the threshold question is whether the mediator engaged in ex parte communication with the parties involved.  If so, it is presumed that confidential information was communicated to the mediator.  See In re County of Los Angeles, 223 F.3d at 993 (noting that when a judge serves as a mediator as opposed to an adjudicator, "the judge will be conclusively presumed to have received client confidences in the course of the mediation."); Cho v. Superior Court, 39 Cal.App.4th 113, 125 (1995) ("Where a judicial officer has presided over settlement conferences which included ex parte communication, we presume the revelation of confidences relating to the merits of a litigant's case.").

Here, the parties do not dispute that Counsel served as a mediator in the Edwards action, and in that capacity, he engaged in private caucuses with each side.  White Decl. ¶ 10.  Though

1    both sides expend considerable energy debating whether or not any "confidential" information

2    was disclosed during those discussions, see Watts Decl. ¶ 10; While Decl. ¶ 12, the Court need

3    not delve into that quagmire.  As discussed above, the law is settled that a mediator's ex parte

4    communication with the parties during the course of the mediation is sufficient to trigger a

5    presumption that the mediator received confidential information.  See In re County of Los

6    Angeles, 223 F.3d at 993; Cho, 39 Cal.App.4th at 125.  As such, the Court finds that the

7    presumption is triggered in this case.

8          The above notwithstanding, the presumption of shared confidences does not

9    automatically mandate disqualification.  "When the cases involve different parties and/or

10   different incidents, disqualification of the former judge [or mediator] … is appropriate only if

11   the two cases are '*substantially factually related*.'"  In re County of Los Angeles, 223 F.3d at

12   994 (citing Poly Software Int'l, Inc. v. Su, 880 F. Supp. 1487, 1494 (D. Utah 1995) (emphasis

13   added); see Cho, 39 Cal.App.4th at 124-125 (directing trial court to disqualify defendant's law

14   firm where one of its partners previously served as a settlement judge in the same case).  To

15   determine whether the two cases are "substantially factually related," the court "must decide

16   whether 'there is a reasonable probability' that the confidences that [the court] presume[s] were

17   disclosed during the settlement discussions in the [prior] case would be useful to the plaintiff in

18   the [later] case."  In re County of Los Angeles, 223 F.3d at 994.  This inquiry entails a "careful

19   comparison between the factual circumstances and legal theories of the two cases."  Id.  There

20   must be "a substantial factual nexus with the previously mediated dispute" and the current

21   action.  Cho, 39 Cal.App.4th at 124 (citing Poly Software Int'l, Inc. v. Su, 880 F. Supp. 1487,

22   1494 (D. Utah 1995)).

23         Here, Plaintiff argues that the instant case is distinguishable from Edwards, ostensibly

24   because each case involves different claims and different medical conditions.  As a general

25   matter, it is true that ERISA claims based on denial of benefits are fact-specific.  See Chellino

26   v. Kaiser Found. Health Plan, 2010 WL 583970, at *2 (N.D. Cal., Feb. 16, 2010) ("every

27   ERISA case is fact-specific.").  Those distinctions, however, are eclipsed by the substantial

28   factual and legal overlap that otherwise exists between the two actions.  As an initial matter,

the legal bases underlying both cases are the same; to wit, that defendants allegedly violated ERISA by wrongfully denying plaintiff's respective claims for LTD benefits.[3]  Though the programs are different, they are functionally the same and both programs are part of the AT&T Umbrella Benefit Plan No. 1.  Watt Decl. ¶ 6.  Notably, both programs provide that AT&T Inc. is the Plan Administrator, and confer discretionary authority to administer claims upon the same third party claims administrator, Sedgwick. Id. ¶¶ 6-8.  In addition, Sedgwick utilizes standardized processes in administering claims and appeals.  Id.

Ultimately, Plaintiff's ability to succeed on her claims will depend on the facts specific to the handling of her claim.  At the same time, it is clear that the terms of the benefits program and Sedgwick's handling of Plaintiff's claim will play a central role in the outcome of this action.  In that regard, the information disclosed during the Edwards mediation may be germane.  Ms. Watts, on behalf of the AT&T Plan Administrator, disclosed AT&T's response to Counsel's evaluation of the Edwards case.  Watts Decl. ¶ 10.  She also disclosed confidential information regarding the company's strategy with respect to the allegations set forth in the Edwards complaint.  Id.  Those disclosures are potentially significant, since the claims in the Edwards action and this case mirror one another—and involve functionally the same program provisions which were interpreted and implemented by the same claims administrator around the same general time period.  Given that overlap, Counsel's acquisition of information regarding AT&T's strategy and approach to litigation based on the denial of LTD benefits claims may prove "useful" in his prosecution of this action.  See In re County of Los Angeles, 223 F.3d at 994.  That is sufficient to warrant Counsel's disqualification.

## II.   **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Defendants' Motion to Disqualify Plaintiff's Counsel is GRANTED.

---

[3] Both complaints also allege that the defendants had a financial conflict of interest in their dual role as both the payer and administrator of the plans.

2.      Within forty-five (45) days of the date this Order is filed, Plaintiff shall file a substitution of counsel indicating her new counsel or that she will be representing herself in this action.  Until Plaintiff files a substitution, attorney Geoffrey White shall continue to accept all notices, papers, and pleadings that may or must be served on Plaintiff.  Mr. White is ordered to forward any materials he receives to Plaintiff upon receipt.  **Failure to timely file a substitution may result in the imposition of sanctions for failure to prosecute under Federal Rule of Civil Procedure 41(b), up to and including dismissal of the action, with prejudice**.

3.      Mr. White shall immediately serve Plaintiff with a copy of this Order and shall thereafter file a proof of service to confirm the same.

4.      The parties shall appear for a telephonic Case Management Conference on **September 23, 2010 at 2:45 p.m.**  The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

5.      This Order terminates Docket 18.

IT IS SO ORDERED.

Dated:  July 6, 2010

_SAUNDRA B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

- 8 -